LEE, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 11—November 8, 1940.*

*James W. Dorsey* of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, Herbert J. Steffes,* district attorney of Milwaukee county, *Edward J. Yockey,* deputy district attorney, *Charles J. Kersten,* and *Gene L. Green,* assistant district attorneys, and oral argument by *Mr. Green.*

FAIRCHILD, J. The defendant had been keeping company with Mrs. Stier who for a time had not been living with her husband. Upon her return to her husband defendant made threats against her life and that of her husband. Although the defendant owned an old revolver, he purchased another and took it with him. It was loaded when he went to the rooming house operated by Thornberg, the deceased. He asked for Mr. Stier who was out. He then asked for Mrs. Stier, who, because she feared defendant, had another woman say she was not in. Thornberg appeared and requested the defendant to leave his premises, which he did by the rear door. He was followed by Thornberg and one Anderson who

walked about ten and fifteen feet, respectively, behind the defendant. Two shots were fired by the defendant as he said for the purpose of frightening those following him. When Thornberg reached a point in the alley near a narrow runway into which the defendant had stepped he was shot. The bullet entered the upper right side of deceased's abdomen just below the ribs and lodged in a muscle of the back. Resulting peritonitis caused Thornberg's death eight days later.

The defendant fled to escape Anderson who pursued him. Later the same evening the defendant did some drinking, referred to his shooting, and brandished his gun. That evening he returned to the Thornberg residence for the avowed purpose of killing Mr. Stier. Testimony of the defendant included a statement that he had not thought of killing anyone else, but that "if somebody came my way, and made a break I probably would have shot him."

From a review of the facts as disclosed by the witnesses, and admitted by the defendant, it appears that the defendant determined to kill John Stier. This purpose arose out of circumstances relating to Lee's association with Mrs. Stier and her decision to end the association and return to her husband. No contention can seriously be made that one who starts out to kill a certain individual with the intention of shooting anyone who might interfere with that plan is not guilty of murder in the first degree when he shoots and kills one he believes is interfering with the accomplishment of his purpose to destroy his intended victim. Evidence showed that Lee was displeased with Stier and that he intended to kill him. In searching for Stier defendant went to the boardinghouse owned by the deceased Thornberg. Upon being ordered off the premises he said to Thornberg in effect: "Come off your premises and I will not permit you to talk this way." Thornberg followed Lee to the point where Thornberg was shot. Lee testified that he fired two shots that went wide to frighten Thornberg and cause him to stop. Thornberg did not stop

and Lee fired a third shot which took effect and resulted in the death of Thornberg.

. Defendant assigns as error the refusal of the court to submit to the jury the issues of murder in the third degree and manslaughter in the second degree. The question raised by this contention is whether the evidence, in any reasonable view, would support a conviction of a degree of homicide lower than first or second-degree murder. *Dickerson v. State,* 48 Wis. 288, 4 N. W. 321; *Perkins v. State,* 78 Wis. 551, 47 N. W. 827; *Terrill v. State,* 95 Wis. 276, 70 N. W. 356; *Murphy v. State,* 108 Wis. 111, 83 N. W. 1112; *Montgomery v. State,* 128 Wis. 183, 107 N. W. 14; *Duthey v. State,* 131 Wis. 178, 111 N. W. 222; *Weisenbach v. State,* 138 Wis. 152, 119 N. W. 843; *Beauregard v. State,* 146 Wis. 280, 131 N. W. 347; *Sweda v. State,* 206 Wis. 617, 240 N. W. 369.

The statutory definition of third-degree murder is:

"The killing of a human being without any design to effect death by a person engaged in the commission of any felony. . . ." Sec. 340.09, Stats.

Defendant gives as a reason for his request for submission of third-degree murder that the jury might find the defendant was committing an assault with intent to do great bodily harm which is a felony, and a killing resulting would therefore be murder in the third degree. The circumstances overcome the ingenious argument of defendant's counsel. The defendant was being expelled from Thornberg's premises where he had gone in search of Mr. Stier. He had been asked or ordered to leave. His manner of compliance with that direction resulted in Thornberg's following Lee to the property line and into the alley back of the premises. It was there the fatal shot was fired. Defendant's own account of the affair, although he claimed to be frightened, shows deliberation and a frame of mind which can only be described as one of malice and one premeditating action which was to result in the death of a person. Murder in the first degree may have as one of its

constituent elements the commission of a felony, and such a construction would make shooting with intent to kill an assault with intent to kill and would thus require the submission of third-degree murder in every case where the offense was really murder in the first degree. The trial court refused to instruct the jury on manslaughter in the second degree. That crime is defined as the unnecessary killing of another while resisting an attempt by such other to commit any felony or to do any other unlawful act or after such attempt shall have failed. Sec. 340.15, Stats. The trial court was justified in refusing to submit manslaughter in the second degree because the facts do not satisfy the statutory measure of the crime. *Fertig v. State,* 100 Wis. 301, 75 N. W. 960; *Perugi v. State,* 104 Wis. 230, 80 N. W. 593. Defendant's claim that he acted in self-defense because Thornberg and Anderson were approaching him was covered by the instructions given with reference to justifiable homicide. Those instructions are not challenged in any way by the defendant.

A survey of the whole case indicates there is no room for a reasonable doubt that the defendant was properly convicted of murder in the first degree. He was ordered from Thornberg's premises. He was armed with a dangerous weapon and made free use of it. The conduct of which the defendant was guilty was either justifiable homicide or murder in one of the degrees submitted to the jury by the trial court. "Conviction of the lesser degree must rest on evidence establishing the facts in that regard, and failing to establish the facts incident to a higher degree." *Weisenbach v. State, supra,* p. 166.

*By the Court.*—Judgment affirmed.